The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory M. Willis. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATION
1. Defendants stopped payment of temporary partial disability compensation on 22 March 1991.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 35 years old with a date of birth of 4 February 1958. For her education, plaintiff had completed high school and had no further education or training. Plaintiff's work history included five years during which she worked for Mirror Products in a position where she supervised 20 other employees. In March 1987 plaintiff began to work for defendant as a shipping clerk. Her job required a variety of duties.
2. On 26 August 1987 plaintiff's sustained an admittedly compensable injury by accident when a saw she was using broke in half and struck her in the jaw. Plaintiff was initially treated at Urgent Medical Center, but was referred to Dr. Joseph Miller, an oral surgeon. Dr. Miller ordered an arthrogram of plaintiff's jaw; and at the time of the arthrogram, there was an anterior dislocation of the disc of the right temporomandibular joint with reduction and a dislocation of the left temporomandibular joint without reduction.
3. Plaintiff complained of headaches following the accident, and Dr. Miller referred plaintiff to Dr. Jeffery Frank a neurologist. At the time of Dr. Frank's examination, there were no neurological defects, but it was Dr. Frank's opinion that muscle spasms caused by the condition of plaintiff's jaw could cause the headaches of which she complained.
4. On 11 November 1987 Dr. Steven Irving, an oral surgeon, performed surgery on plaintiff's jaw. The procedure was a reduction of the dislocated meniscus and plication of the meniscus to both sides of the jaw and a repair of the lateral temporomandibular joint on the left. It was Dr. Irving's initial opinion that plaintiff could return to work about two weeks after surgery; however, plaintiff responded more slowly than was expected and Dr. Irving referred plaintiff to Dr. David Ross, an orthopedic surgeon.
5. On 29 December 1987 (four months after the accident) plaintiff was examined by Dr. Ross. At this time there was no significant skeletal or neurological abnormality, and Dr. Ross diagnosed myofascial pain syndrome. Dr. Ross referred plaintiff to Dr. Thomas Laver, a psychiatrist, for a consultation.
6. Dr. Laver first examined plaintiff on 27 January 1988. At this time plaintiff was suffering from a major depressive episode which was caused by the accident of 26 August 1987. Under Dr. Laver's treatment plaintiff initially made significant progress. In May 1988, about four months after beginning treatment with Dr. Laver, defendant-insurance carrier denied coverage for any further psychological treatment. At this time it was Dr. Laver's opinion that with psychological treatment plaintiff had an excellent prognosis for returning to work, but without psychological treatment her prognosis was only fair. In July 1988, defendant-insurance carrier again approved psychological treatment after it was recommended by a psychiatrist at their choice.
8. In April 1988, while still under psychological treatment, Dr. Ross recommended that plaintiff return to work at light duty. Plaintiff made several attempts to return to work, but left each time shortly after she arrived. In June 1988 Dr. Ross had no further treatment to offer plaintiff, and the doctor referred her back to Dr. Laver.
9. In the summer of 1988 plaintiff received treatment through biofeedback, physical therapy and psychological treatment. In the fall of 1988 plaintiff began treatment with the Pain Control Center at North Carolina Baptist Hospital. She was admitted to the hospital in December 1988, and defendant planned for plaintiff to return to work in January 1989.
10. On 4 January 1989 Dr. Rauch, a physician at the Pain Control Center, was of the opinion that plaintiff had reached maximum medical improvement with a 10 to 15 percent permanent partial impairment to her head and neck. It was also Dr. Rauch's opinion that plaintiff should not return to work with defendant due to memories of the accident and guilt concerns. Dr. Rauch recommended that plaintiff return to work with another employer and that she began work part-time and gradually increased to full time work.
11. On 24 February 1989 plaintiff returned to work with the One Dollar Store in High Point. In this job plaintiff worked four hours per day, three days per week. After plaintiff returned to work for about seven months, plaintiff was contacted by a vocational rehabilitation consultant who had worked with her earlier. The consultant was investigating whether plaintiff returned to work at full time duties. Plaintiff was referred by the consultant to a chiropractor, and plaintiff received chiropractic treatment in September and October 1989.
12. Plaintiff left work at the One Dollar Store in January 1990, after working less than one year. At this time no doctor had given plaintiff an excuse to be out of work. Plaintiff did not receive medical treatment for about 14 months after she left work, through March 1991, when she began to receive psychological treatment from Dr. Alexander Myers, a psychiatrist (last medical treatment was in January 1989 with the Pain Control Clinic and October 1989 with the chiropractor). Between the time plaintiff stopped working and the time she began treatment with Dr. Myer, plaintiff was examined by Dr. Philip Deaton, a neurologist, and returned to Dr. Frank. At the time of these neurological examinations, there were no neurological defects present and her examinations with generally within normal limits.
13. When plaintiff returned to work in 1989, the parties executed a Supplemental Agreement for Compensation (Industrial Commission Form 26) in which defendant agreed to pay plaintiff $101.33 in temporary partial disability compensation beginning on 26 March 1989 and continuing for necessary weeks. Since the time the agreement was approved, plaintiff has not sustained a substantial change of condition. The finding that plaintiff's condition had remained generally the same is based on the following:
1. Her report at the Pain Control Clinic in May 1992 that her condition was the same as it had been in January 1989,
2. The results of her physical examinations after she stopped working were the same as they had been at the time of the execution of the agreement,
3. Plaintiff's complaints remained the same after she stopped working as the complaints she had made at the time of the agreement, and
4. Dr. Myer's Beck Depression Inventory Test revealed that plaintiff suffered only a mild mood disturbance after the time she stopped working.
Defendant stopped payment of temporary partial disability on 23 March 1991; and at the time defendant stopped payment, defendant had not received approval from the Industrial Commission.
14. Plaintiff claims to experience severe headaches; and in order to relieve the headaches, she must lay down periodically during the day. Plaintiff claims that because of these headaches, she is unable to work at any job available and will never be able to work again for the rest of her life. The undersigned finds plaintiff's description of her pain was not credible, in that her pain was not as severe as she claims it to be. This finding is based on plaintiff's demeanor at the hearing, on the physical findings of her doctors during their examinations, and on the results of a myelogram, CT scan, and MRI, which were all within normal limits.
15. On January 1990 and continuing through at least 27 May 1993, plaintiff was capable of returning to work at four hours per day, three days per week. There were jobs available within these restrictions which plaintiff could reasonably be expected to obtain such as the job with the One Dollar Store which she did, in fact, obtain.
16. Plaintiff's depression was caused by the injury by accident of 26 August 1987. Treatment plaintiff had received from Dr. Myers was made necessary as a result of the accident in order to effect a cure, to provide relief, or reduce any period of time during which plaintiff was unable to be gainfully employed.
* * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff is entitled to temporary partial disability compensation in the amount of $101.33 per week for the period of time from 23 March 1991 through 27 May 1993 (300 weeks from the date of her accident). N.C.G.S. § 97-30.
2. Defendants stopped payment of temporary partial disability compensation without approval of the Industrial Commission. Therefore, plaintiff is entitled to a penalty to be paid by the defendant in the amount of 10 percent of all compensation due between 23 March 1991 and 27 May 1993. N.C.G.S. § 97-18.
3. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the injury by accident of 26 August 1987. Said payment of medical expenses shall include payment for treatment provided by Dr. Alexander Myers for her psychological condition. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff temporary partial disability compensation in the amount of $101.33 per week for the period of time from 23 March 1991 through 27 May 1993 (300 weeks from the date of the accident). As said amount has accrued, payment shall be made in a lump sum, and payment shall be subject to an attorney's fee as provided below.
2. Defendants shall pay plaintiff a penalty in the amount of 10 percent of all compensation due for temporary partial disability. Payment shall be made in a lump sum, and payment shall be subject to an attorney's fee as provided below.
3. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of the injury by accident. Payment shall include payment for the treatment of Dr. Alexander Myers. Payments shall be made after bills for said medical expenses have been submitted by the defendant to the Industrial Commission and approved by the Industrial Commission.
4. An attorney's fee in the amount of 25 percent of all compensation due plaintiff is hereby approved for plaintiff's counsel. Payment shall be made by deducting 25 percent from all compensation due plaintiff and forwarding same directly to plaintiff's counsel, Anderson Cromer. Plaintiff's two attorneys may divide said compensation by whatever method they choose.
5. Defendants shall pay costs due this Commission for the initial hearing before the Deputy Commissioner, including an expert witness fee in the amount of $150.00 to Dr. Alexander Myers. Each side shall bear its own costs for hearing before the Full Commission.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER